IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| DONNA FRYER and BARBARA DAVISON,<br><br>                  Plaintiffs,<br><br>vs.<br><br>UMIA, an insurance company, and CONSTELLATION, INC., a mutual insurance holding company, doing business as "Constellation®",<br><br>                  Defendants. | CV 22-14-BLG-SPW<br><br><br>ORDER ON PLAINTIFFS' MOTION IN LIMINE RE: DEFENDANTS' EXPERT REPORTS AND OPINIONS |

Before the Court is Donna Fryer's and Barbara Davison's ("Plaintiffs") Motion in Limine Re: Defendants' Expert Reports and Opinions. (Docs. 109, 110). The motion is fully briefed and ripe for the Court's review. (*See* Docs. 114 and 120). For the following reasons, the Plaintiffs' motion is DENIED in part and otherwise RESERVED FOR RULING.

## I.     Background

The facts of this case are laid out in detail in the Findings and Recommendations on the parties' motions for summary judgment filed by U.S. Magistrate Judge Timothy Cavan on January 17, 2025 and adopted by the Court on March 3, 2025. (Docs. 121, 129). The Court will adopt those facts and restate only the relevant facts here.

Fryer filed a medical malpractice suit against Dr. Arguelles and the Arthritis and Osteoporosis Center ("AOC") in Montana State District Court on October 3, 2018. (Doc. 74-1 at 416–26). Davison filed a medical malpractice suit against Dr. Arguelles and the AOC in Montana State District Court on December 24, 2018. (Doc. 74-1 at 416–26, 493–503). Plaintiffs' 2018 lawsuits are referred to as the "Underlying Claims."

After the Plaintiffs settled the Underlying Claims with Dr. Arguelles, respectively, the Plaintiffs sued UMIA for violation of the Montana Unfair Trade Practices Act ("UTPA")[1] in Montana State District Court for its handling of the Underlying Claims. (Doc. 1-4). UMIA removed the action to this Court based on diversity of citizenship. (Doc. 1). The Plaintiffs filed the instant motion prior to the Court's ruling on summary judgment seeking to exclude evidence related to the Defendants' proposed expert opinions.

## II.    Legal Standard

A motion in limine is used to preclude prejudicial or objectionable evidence before it is presented to the jury. *Agan v. BNSF Ry. Co.*, CV 19-83-BLG, 2022 WL 3700052, at *1 (D. Mont. Aug. 26, 2022). The Court shall exclude evidence in limine only if the evidence is inadmissible on all potential grounds. *Id.* Unless evidence meets this high standard, the Court shall defer evidentiary rulings until trial

---

[1] Initially, Plaintiffs also asserted a claim for abuse of process against UMIA but have voluntarily dismissed the claim. (Doc. 27).

so that questions of foundation, relevancy, and potential prejudice are resolved in proper context. *Id.* A motion in limine "should not be used to resolve factual disputes or weigh evidence." *BNSF Ry. Co. v. Quad City Testing Lab'y, Inc.*, CV-07-170-BLG, 2010 WL 4337827, at *1 (D. Mont. Oct. 26, 2010).

Motions in limine must specifically "identify the evidence at issue and state with specificity why such evidence is inadmissible. *Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc.*, 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010). "Orders in limine which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility of evidence as they arise." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975).

The decision on a motion in limine is consigned to the district court's discretion—including the decision of whether to rule before trial at all. *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999). Rulings on motions in limine are provisional, and the trial judge may always change their mind during trial. *Luce v. United States*, 469 U.S. 38, 41 (1984).

## III. Discussion

Plaintiffs seek to exclude four of Defendants' expert opinions and reports including: (1) Dr. Korey Ulrich's expert opinion regarding any possible adverse effects resulting from Dr. Arguelles' management of Plaintiffs from February 2009

to December 2015; (2) William Mercer's expert opinion regarding the U.S. Government's investigation into Dr. Arguelles and the AOC; (3) Cal Stacey's expert opinion regarding the Underlying Claims; and (4) Molly O'Brien's expert opinion regarding UMIA's handling of the Underlying Claims. (*See* Doc. 110-1). Plaintiffs seek to exclude the expert testimonies and reports on the grounds that UMIA's expert opinions are based "entirely on a retrospective view of the facts"—a type of "after-acquired" evidence that is generally inadmissible when litigating a Montana UTPA claim. (Doc. 110 at 8).

Accordingly, as a threshold issue, the Court must determine whether expert testimony is considered "after-acquired" evidence making it inadmissible in a Montana UTPA action.

Montana's UTPA provides in part that an insurer may not "neglect to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear . . . ." Mont. Code Ann. § 33-18-201(6). The ultimate question for the jury is whether UMIA violated the UTPA in its handling of Plaintiffs' malpractice claims—the Underlying Claims. In resolving this question, the jury is not asked to determine whether Dr. Arguelles or the AOC were actually liable for the Underlying Claims. "The issues in a UTPA claim are separate from the issues in the underlying claim." *Graf v. Continental Western Ins. Co.*, 89 P.3d 22, 25 (Mont. 2004). Yet, "there is an intimate connection between the facts

of the [U]nderlying" Claims and the decisions made by UMIA in handling the claim. *See Peterson v. St. Paul Fire and Marine Ins. Co.*, 239 P.3d 904, 911 (Mont. 2010). "Indeed, the operative facts of the [malpractice claims], their legal consequences, the results of [UMIA's] investigation into the [alleged malpractice], and [UMIA's] conduct in handling [the Underlying Claims] are indelibly intertwined with the question of whether liability was 'reasonably clear' in this case." *Id.*

Under Montana law, operative facts of the Underlying Claims, and the information available to the insurer during the adjusting process, are probative as to the merits of UTPA claims. *See Lorang v. Fortis Ins. Co.*, 192 P.3d 186, 204–05 (Mont. 2008). In fact, the "public policy embodied in the UTPA [is that] insurer conduct is to be retrospectively measured against the standards adopted by the Legislature," and those "UTPA standards focus on what the insurer knows at a particular point in time." *Graf*, 89 P.3d at 27. Thus, the information in an insurer's record is critical in determining whether a UTPA violation has occurred. *Lorang*, 192 P.3d at 204.

Based on the foregoing principles and admissibility standards underlying Montana UTPA claims, the Court finds that expert testimony acquired after the fact can be relevant and admissible if it sheds light on the insurer's conduct and the reasonableness of its investigation and decision-making process while adjusting the claims. Plaintiffs point to no legal authority supporting their argument that Montana

places a per se ban on the admissibility of experts and their opinions retained after the events that gave rise to the UTPA action. To the contrary, the Court finds several Montana cases where experts testified or provided opinions in a UTPA action, after the fact. *See e.g.*, *Peterson v. St. Paul Fire and Marine Ins. Co.*, 239 P.3d 904, 908 (Mont. 2010) (plaintiff's expert "testified about standards used by insurance companies when adjusting and investigating claims"); *Jacobsen v. Allstate Ins. Co.*, 215 P.3d 649, 658 (Mont. 2009) (Montana Supreme Court affirmed district court decision to allow plaintiff's expert to testify at trial about the industry practices with respect to advancing lost wages); *McVey v. USAA Cas. Ins. Co.*, 313 P.3d 191, 193 ("[Defendant's] own expert . . . reviewed accident reconstruction reports prepared by an expert for [plaintiff] and an expert for [the insured involved in the car crash.]"); *Dees v. Am. Nat'l Fire Ins. Co.*, 861 P.2d 141, 146, 148 (Plaintiff presented evidence to the jury including expert testimony to support his contention that defendant denied his claim without conducting a reasonable investigation.). The key to abiding by Montana's "after-acquired" evidence rule is to restrict expert testimony to an analysis of the facts and law known to the insurance company at the time of the Underlying Claims. Plaintiffs offer no such argument here. In this respect, Plaintiffs motion is denied.

As to all other objections raised by Plaintiffs in their brief, the Court finds that Plaintiffs failed to show how the experts' opinions and reports are inadmissible "on

all potential grounds." *See Agan*, CV 19-83-BLG, 2022 WL 3700052, at *1. Further, "[o]rders in limine which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility of evidence as they arise." *Sperberg*, 519 F.2d at 712. Accordingly, the Court reserves its ruling as to Plaintiffs other objections.

## IV.    Conclusion

IT IS ORDERED that Plaintiffs' Motion in Limine (Doc. 109) is DENIED as to the blanket exclusion of Defendants' expert opinions and reports under the "after-acquired" evidence rule and RESERVED FOR RULING in all other respects.

DATED this 3rd day of April, 2025.

SUSAN P. WATTERS
United States District Judge

7