IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

|  |  |
|---|---|
| DONNA FRYER and BARBARA DAVISON,<br><br>Plaintiffs,<br><br>vs.<br><br>UMIA, an insurance company, and CONSTELLATION, INC., a mutual insurance holding company, doing business as "Constellation®",<br><br>Defendants. | CV 22-14-BLG-SPW<br><br>ORDER |

Before the Court is Donna Fryer's and Barbara Davison's (collectively, the "Plaintiffs") Motion for Protective Order to Terminate the Deposition and Bar the Trial Testimony of Federal Judicial Nominee William Mercer (Doc. 135) and the Plaintiffs' Motion to Expedite Ruling on the Motion for Protective Order (Doc. 137). Defendants UMIA and Constellation, Inc., (collectively, "UMIA") oppose the motions. For the following reasons, the Court grants in part, denies in part, and reserves for ruling in part the Plaintiffs' motions.

## I.   Background

The Plaintiffs' primary motion concerns whether a retained expert, nominated for a federal judicial vacancy in the District of Montana, may be deposed and then admitted to testify at trial.

On January 13, 2022, the Plaintiffs sued UMIA for violation of the Montana Unfair Trade Practices Act ("UTPA") in Montana State District Court for its handling of their medical malpractice claims against Dr. Enrico Arguelles and his clinic, the Arthritis & Osteoporosis Center. (Doc. 1-4).  UMIA removed the action to this Court based on diversity of citizenship, asserting the defense that it had a reasonable basis in law and in fact for contesting the malpractice claims.  (Doc. 1). Trial is set for November 3, 2025.

Discovery closed in May 2024.  However, as is common practice among litigants, the parties agreed to depose expert witnesses after the discovery deadline, but before trial, to provide the parties with enough time to prepare for cross examination of those witnesses.  One of UMIA's retained experts is practicing attorney William Mercer.  He is a partner at Holland & Hart LLP in Billings, Montana.  Mr. Mercer supplied his expert report to the parties in June 2024.  (Doc. 136-1). Mr. Mercer opines in his report on subjects related to Montana UTPA claims including: (1) "duties imposed on Montana attorneys with respect to pleading standards in civil litigation;" (2) "the investigation, prosecution and settlement of civil and criminal False Claims Act and health care fraud cases by the United States in the District of Montana;" (3) "the proof threshold required for a federal judge to issue a search warrant;" (4) whether the Plaintiffs' state court pleadings alleged fraud

and other violations of law; (5) and generally, whether UMIA had a reasonable basis to believe that Dr. Arguelles violated federal law and engaged in fraud. (*Id.* at 1–2).

The parties exchanged numerous emails from May to July 2025 to coordinate schedules and arrange for the expert depositions, eventually scheduling Mr. Mercer's deposition for August 8, 2025. (Docs. 138-1–138-3; Doc. 136-3). On July 11, President Donald J. Trump nominated Mr. Mercer to serve as a United States District Judge for the District of Montana. (Doc. 138 at 3; Doc. 136 at 5). Mr. Mercer appeared before the Senate Judiciary Committee for his nomination hearing on July 29. As of today, Mr. Mercer has neither been confirmed nor commissioned for the role.

Despite Mr. Mercer's July nomination, the Plaintiffs ostensibly decided to move forward with Mr. Mercer's August 8 deposition. They provided proper notice of deposition to UMIA on August 4. (Doc. 138-4). The next day, however, the Plaintiffs reversed course. They canceled Mr. Mercer's deposition raising concerns about using testimony from a judicial nominee. (Doc. 136-3 at 4). In an August 5 email, the Plaintiffs' counsel wrote: "I read the Judicial Canons as expressly stating that they apply to judicial nominees. As a result, we are cancelling the deposition. Let us know if you intend to perpetuate[1] [Mr. Mercer's] deposition at a later date so

---

[1] The parties often refer to Mr. Mercer's impending deposition as "perpetuation" testimony. A deposition to perpetuate is governed by Federal Rule of Civil Procedure 27 and is specifically designed to preserve evidence before a lawsuit is filed or while an appeal is pending. This is not the case here. "[T]he Federal Rules of Civil Procedure make no distinction for use of

that we can file a motion with the court." (*Id.* at 3). UMIA disagreed with the Plaintiffs' position and responded: "Given the scheduling difficulties that we've encountered, we will be noticing [Mr. Mercer's] perpetuation deposition for this Friday, August 8, in Billings." (*Id.* at 3–4). UMIA provided notice that day. (Doc. 136-2 ("Notice of Evidentiary Deposition")).

On August 6, the Plaintiffs filed the instant motions. The primary motion presents two distinct issues—one of discovery and the second of admissibility. Accordingly, the Court will first determine whether the Plaintiffs are entitled to a protective order to terminate Mr. Mercer's deposition under Rules 26 and 30 of the Federal Rules of Civil Procedure. Second, to the extent the Plaintiffs seek to preclude Mr. Mercer's testimony from trial, the Court converts the motion into a motion in limine.

## II.   Discussion

### A.   *Motion for Protective Order*

The "broad right of discovery is based on the general principle that litigants have a right to 'every man's evidence,' and that wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) (citing *United States v.*

---

a deposition at trial between one taken for discovery purposes and one taken for use at trial . . . ." *Jones v. Nat'l R.R. Passenger Corp.*, No. 15-cv-02726, 2023 WL 2743567, at *2 (N.D. Cal. Mar. 30, 2023) (quotations and citation omitted). UMIA intends to use Mr. Mercer's deposition at trial if he is unavailable to testify.

*Bryan*, 339 U.S. 323, 331 (1950)). Within these general parameters, district courts have significant discretion to prohibit or limit discovery. *Sablan v. Dep't of Fin. Of the Commonwealth of N. Marianara Islands*, 856 F.2d 1317, 1321 (9th Cir. 1988). "The court, may for good cause, issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense," including specifying terms for disclosure or discovery or forbidding inquiry into certain matters. Fed. R. Civ. P. 26 (c)(1)(C), (D). "This decision requires the court to balance the requesting party's need for the evidence against the harm that disclosure may have on the objecting party." *Pizzuto v. Tewalt*, 1:21-cv-00359, 2025 WL 563768, (D. Idaho Feb. 19, 2025).

The Plaintiffs seek a Rule 26 protective order that would forbid UMIA from deposing Mr. Mercer. They argue a protective order is necessary because (1) UMIA's deposition notice was untimely, and (2) Mr. Mercer's deposition is inadmissible at trial. (Doc. 136 at 7–11). The Court finds the second point is more aptly addressed in the motion in limine and will discuss the admission of Mr. Mercer's deposition below. As to the first point, UMIA argues that the Plaintiffs cannot claim that UMIA's notice was untimely because both parties agreed to depose Mr. Mercer on August 8. (Doc. 138 at 5). UMIA merely filled the slot that became available when the Plaintiffs cancelled. The Court agrees with UMIA and denies the Plaintiffs' motion for a protective order.

Rule 26(c)(1) of the Federal Rules of Evidence instructs the court to limit discovery in the interest of justice to protect someone from annoyance, embarrassment, oppression, undue burden or expense. The court may enter a protective order for "good cause" when the party seeking the protection meets the burden that good cause exists. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002). In this instance, the Plaintiffs must establish good cause by demonstrating that UMIA failed to provide reasonable notice of Mr. Mercer's deposition. They have not done so.

A party who wants to depose a person by oral questions must give reasonable written notice. Fed. R. Civ. P. 30(b)(1). However, there is no bright line as to what reasonable notice is, and the determination is discretionary. *See Kolon Indus. Inc. v. E.I. DuPont de Nemours & Co.* 748 F.3d 160, 173 (4th Cir. 2014); *Barbin v. MV Transp., Inc.*, No. 1:12-cv-00232 AWI, 2012 WL 3150051, at *2 (E.D. Cal. Aug. 1, 2012) ("[T]here is no fixed rule because the reasonableness of the notice must be evaluated in light of the circumstances of each particular case."). Thus, "[w]hat constitutes reasonable notice depends on the circumstances of each case." *HBE Corp. v. Cummins Cal Pac., LLC*, No. SACV 17-0052, 2018 WL 6133630, at *1 (C.D. Cal. Jan. 4, 2018).

Under the circumstances of this case, the Court finds that the Plaintiffs had reasonable notice. The parties mutually agreed to schedule and take expert

depositions after the close of discovery. After exchanging numerous emails over three months to accommodate counsels' schedules, the parties agreed to Mr. Mercer's August 8 deposition. Three days before the deposition, the Plaintiffs decided to cancel. The Court cannot fault UMIA for seizing upon the scheduling opportunity and notifying the Plaintiffs—the same day Plaintiffs cancelled—of its intent to depose Mr. Mercer, especially when the parties had already cleared their schedules and made the arrangements to appear.

The Court vacated Mr. Mercer's August 8 deposition pending the resolution of this motion. (Doc. 139). While the Plaintiffs' primarily object to Mr. Mercer's deposition because of the risk of unfair prejudice at trial, the Court addresses those objections below. Otherwise, in the interest of UMIA's broad right to discovery and the Plaintiffs' failure to demonstrate good cause for untimely notice, the Court declines to enter a protective order and UMIA may proceed with Mr. Mercer's deposition, provided UMIA gives the Plaintiffs reasonable written notice of the date and time. *See Barbin*, 2012 WL 3150051, at *2 ("A number of cases have held that, for a deposition without production of documents, ten days notice is generally considered reasonable," however, "there is no fixed rule because the reasonableness of the notice must be evaluated in light of the circumstances of each particular case.").

B.     *Motion in Limine*

Next, the Court faces a unique issue: whether expert testimony from a federal judicial nominee may be admitted at trial. The issue is further confounding to the Court because Mr. Mercer might be a sitting judge in this District when trial begins in November. The uncertainty of Mr. Mercer's status complicates the Court's analysis. On one hand, it seems unusual to rule on the admissibility of Mr. Mercer's expert testimony when his status as a judge is unknown. On the other hand, with trial rapidly approaching, a ruling would likely benefit the parties as they prepare. While no one holds a crystal ball, the Court decides to nevertheless issue a ruling in the interest of judicial efficiency and economy. The Court has converted the Plaintiffs' request to exclude Mr. Mercer's testimony into a motion in limine and will evaluate it accordingly.

A motion in limine is used to preclude prejudicial or objectionable evidence before it is presented to the jury. *Agan v. BNSF Ry. Co.*, CV 19-83-BLG, 2022 WL 3700052, at *1 (D. Mont. Aug. 26, 2022). The court shall exclude evidence in limine only if the evidence is inadmissible on all potential grounds. *Id.* Unless evidence meets this high standard, the court shall defer evidentiary rulings until trial so that questions of foundation, relevancy, and potential prejudice are resolved in proper context. *Id.* A motion in limine "should not be used to resolve factual disputes or

weigh evidence." *BNSF Ry. Co. v. Quad City Testing Lab'y, Inc.*, CV-07-170-BLG, 2010 WL 4337827, at *1 (D. Mont. Oct. 26, 2010).

Motions in limine must specifically "identify the evidence at issue and state with specificity why such evidence is inadmissible. *Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc.*, 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010). "Orders in limine which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility of evidence as they arise." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975).

The decision on a motion in limine is consigned to the district court's discretion—including the decision of whether to rule before trial at all. *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999). Rulings on motions in limine are provisional, and the trial judge may always change their mind during trial. *Luce v. United States*, 469 U.S. 38, 41 (1984).

Whether Mr. Mercer testifies in person or UMIA introduces his deposition in lieu of live testimony, the Plaintiffs argue that admitting his testimony at trial would violate the Code of Conduct for United States Judges and would create a substantial risk of unfair prejudice. (Doc. 136 at 12–15; Doc. 146). UMIA disagrees. To address the parties' arguments, the Court will issue a two-part ruling based on two possible outcomes. First, if Mr. Mercer is a sitting judge when trial begins, the Court

rules that his testimony, either by deposition or live, will not be admissible at trial. Second, if Mr. Mercer remains a nominee when trial begins, the Court rules that his in-person testimony will be admissible at trial. The Court reserves its ruling on whether UMIA may introduce his deposition testimony at trial under Federal Rule of Civil Procedure 32 if he remains a nominee. The Court's reasoning is detailed below.

### 1.    Mr. Mercer as a sitting judge

If Mr. Mercer is confirmed as a district judge when trial starts, UMIA intends to introduce his deposition under Rule 32 of the Federal Rules of Civil Procedure. Rule 32 establishes a three-part test for admissibility of deposition testimony that the party seeking to introduce the testimony must satisfy:

> 1. The party against whom the testimony is offered was present at, represented at, or had reasonable notice of the deposition;
>
> 2. The testimony is otherwise admissible under the Federal Rules of Evidence; and
>
> 3. The testimony is admissible under the provisions in Rule 32(a)(2)–(8), which allows testimony of an unavailable witness.

Fed. R. Civ. P. 32(a)(1).

Though the parties have not deposed Mr. Mercer, the Court assumes the first requirement will be satisfied by trial. Next, the Court assumes the third requirement will be satisfied because a sitting judge, in a case not before him, likely qualifies as

an unavailable witness under the "exceptional circumstance" condition.[2]  Fed. R. Civ. 32(a)(4)(E) ("A party may use for any purpose the deposition of a witness . . . if the court finds: on motion and notice, that exceptional circumstances make it desirable—in the interest of justice and with the due regard to the importance of live testimony in open court—to permit the deposition to be used.").  Finally, UMIA would need to show that Mr. Mercer's deposition is admissible under the Federal Rules of Evidence.  To this, the Plaintiffs argue that Rule 403's balancing test bars Mr. Mercer's testimony.  (Doc. 146 at 3).

To illustrate and support their position, the Plaintiffs cite several cases where courts have excluded a judge's testimony either under the state's judicial code of conduct or the Rules of Evidence.  UMIA discourages the Court from relying on these examples arguing that the facts of this case are distinguishable—namely, that Mr. Mercer is a nominee, not a judge.  Though true, the Court finds the Plaintiffs' cited cases are relevant if Mr. Mercer is confirmed.  Thus, the Court will review the cases in turn.

The Plaintiffs first reference *Georgou v. Fritzshall*, where a federal district court for the Northern District of Illinois prohibited a former county judge from testifying in an attorney malpractice suit.  93 C 997, 1995 WL 248002, at *8 (N. D.

---

[2] The Plaintiffs argue that UMIA failed to "enunciate any reason why [Mr.] Mercer [would be] 'unavailable' at trial." (Doc. 136 at 7).  The Court notes the Plaintiffs' argument and finds that it is not dispositive to the Court's analysis at this time.

Ill. Apr. 26, 1995). The county judge had presided over the parties' previous civil case and the court ultimately held that the judge was not competent to testify in the attorney malpractice suit regarding the mental processes he made in the prior case. *Id.* at *3–7. As an alternative ground for its holding, the court excluded the judge's testimony under Rule 403's balancing test. The Court made several findings on this point. First, there was a "substantial risk that a jury [would] give too much credence to the testimony of a judge." *Id.* at *4. It would be practically impossible for a party to challenge the judge's mental impressions, let alone force an opposing party to contend with the "additional measure of credibility that a judge is likely to inspire merely due to his position." *Id.* Second, the judge's testimony posed a pronounced danger that it "[was] likely to be weighted more heavily than that of other witnesses and may be considered determinative by the jury." *Id.* This was especially true in the context of an alleged malpractice suit which must be evaluated by the state of the law at the time. This testimony would inherently rely on the judge's "recreation of his mental processes." *Id.* Third, the "appearance of a judge at a trial [was] likely to engender suspicions of bias on the part of the opposing party"—an allowance of which would compromise the public's perception of the judiciary. *Id.* at *5. Finally, the risk of confusing the jury concerning the import of judicial testimony was high. *Id.* at *8.

By comparison, in *Reliable Transportation Specialists, Inc. v. Wausau Underwriters Insurance Company*, a federal district court in the Eastern District of Michigan prohibited a retired judge's opinion testimony under Rule 403's balancing test but allowed the judge's fact testimony with limiting instructions. No. 15-12954, 2019 WL 1559462, at *2 (E.D. Mich. Apr. 10, 2019). First, the court recognized that having a judge testify as an opinion witness regarding a case she presided over would be inherently prejudicial. *Id.* The prejudice coupled with the judge's lack of complete information regarding the trial and settlement conferences led the court to conclude that the probative value of her opinion testimony was substantially outweighed by the danger of unfair prejudice. *Id.* Second, regarding the judge's fact testimony, the court had concerns about relevance and risk of jury confusion, however concluded it could be mitigated by instructing the jury to consider her testimony as they would any other witness, by not giving it more weight because she was a judge. *Id.*

Finally, the Plaintiffs reference *Joachim v. Chambers*, wherein the Supreme Court of Texas held that Canon 2 of Texas' Code of Judicial Conduct[3] precluded a

---

[3] In light of *Joachim*, the Plaintiffs direct the Court to the Federal Judicial Code of Conduct. Canon 2 of the Code of Conduct for United States Judges is nearly identical to Texas' Code. *Guide to Judiciary Policy*, Vol. 2A, Ch. 2, Canon 2. The Plaintiffs rely on the Federal Code arguing that Mr. Mercer is prohibited from testifying at trial and should recuse himself. (Doc. 146 at 8). The Court does not make a ruling on whether or not Mr. Mercer would be allowed to testify pursuant to the Code, but finds the Texas court's analysis instructive as to the effect of permitting a judge to testify at trial under Rule 403.

retired district judge, who continued to serve as a judicial officer by assignment, from testifying as an expert witness. 815 S.W.2d 234, 235 (Texas 1991). Canon 2 of the Texas Code of Judicial Conduct stated:

> **A Judge Should Avoid Impropriety and the Appearance of Impropriety in all Activities**
>
> A. A judge should respect and comply with the law and should conduct himself or herself in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
>
> B. A judge should not allow family, social, or other relationships to influence his or her judicial conduct or judgment. A judge should not lend the prestige of his or her office to advance the private interests of himself or herself or others; nor should he or she convey or permit others to convey the impression that they are in a special position to influence him or her. A judge should not testify voluntarily in an adjudicative proceeding as a character witness.

*Id.* at 237 (quoting Supreme Court of Texas, Code of Judicial Conduct). The court found that allowing the judge to testify would confer his considerable prestige as a judicial officer in support of the defendants' position, which could create an appearance of impropriety and partiality. *Id.* at 238–40. Relevant to this case, the court opined:

> A judge who testifies as an expert witness for a private litigant provides more than evidence; the judge also confers the prestige and credibility of judicial office to that litigant's position, just as a judge who testifies to the litigant's character. Expert witnesses, unlike judges, rarely appear impartial; a party does not ordinarily call an expert whose testimony is unfavorable. An expert witness is offered to support a party's position, and if the expert is a judge, the jury may mistake that support for an official endorsement.

*Id.* at 238. The court ultimately directed the trial court to strike the judge's testimony and prohibit the defendants from calling him to testify as an expert witness. *Id.* at 240–41.

Here, UMIA must meet one final requirement under Rule 32 in order to use Mr. Mercer's deposition at trial. As discussed above, UMIA must show that the deposition is admissible under the Federal Rules of Evidence. The Court finds that UMIA cannot overcome this hurdle.

Indeed, under Federal Rule of Evidence 605, the presiding judge may not testify at trial. However, neither Rule 605 nor any other rule of evidence patently bars a judge from testifying in other proceedings. Accordingly, the Court turns to the test of relevance and its corollary test—Rule 403—which safeguards fairness and efficiency at trial.

In general, relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. Fed. R. Evid. 401. Mr. Mercer's expert testimony certainly makes the fact that UMIA had a reasonable basis to believe Dr. Arguelles was violating the law—and thus, UMIA was not liable to Plaintiffs under the insurance policy—more probable than it would be without his opinion. This fact is of consequence to the action as it constitutes an element of UMIA's defense and Mr. Mercer's testimony is relevant.

Nevertheless, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "[W]hat counts as the Rule 403 'probative value' of an item of evidence, as distinct from its Rule 401 'relevance,' may be calculated by comparing evidentiary alternatives." *Old Chief v. United States*, 519 U.S. 172, 184 (1997). "[I]ts value must be determined with regard to the extent to which the [fact] is established by other evidence, stipulation, or inference. It is the incremental probity of the evidence that is to be balanced against its potential for undue prejudice." *United States v. Beechum*, 582 F.2d 898, 914 (5th Cir. 1978). Alternatively, evidence is unfairly prejudicial only if it has "an undue tendency to suggest decision on an improper basis," commonly, though not necessarily, an emotional one. Advisory Committee's Note, Fed. R. Evid. 403. Evidence is further unfairly prejudicial if it "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish," or otherwise "may cause a jury to base its decision on something other than the established propositions in the case." *United States v. Skillman*, 922 F.2d 1370, 1374 (9th Cir. 1990).

Here, the Court finds that a judge who provides expert opinion testimony at a trial not before him poses substantial risks to a jury's decision-making.

16

As to probity, the Court finds that Mr. Mercer's testimony is relevant to UMIA's defense. Under Montana's UTPA, an insurer may not be held liable if it had a reasonable basis in law or in fact for contesting the Plaintiffs' underlying claims. Mont. Code. Ann. § 33-18-242(6) (2021). Mr. Mercer's testimony offers the opinion that "one could reasonably conclude that [Dr.] Arguelles violated federal law in his treatment of patients." (Doc. 114 at 5). Thus, if UMIA can demonstrate that Dr. Arguelles was violating the law, then UMIA can likely show that it had a reasonable basis for disputing the Plaintiffs' claims pursuant to their insurance policies. Mr. Mercer's testimony thus lends support to UMIA's defense that it is not liable to Plaintiffs because its actions were appropriate and met industry standards.

His testimony is incrementally more probative in the light of other expert evidence. In addition to Mr. Mercer, UMIA intends to introduce expert testimony from a medical malpractice attorney, a rheumatologist, and UMIA's chief legal officer. The additional expert testimony will alleviate some need for Mr. Mercer's testimony, but not all. This is especially true in considering the reasonableness standard. Unlike the other expert testimony, Mr. Mercer will provide the jury with the legal background necessary to determine whether Dr. Arguelles was violating the law. In turn, that opinion will likely weigh in favor of the theory that UMIA had a reasonable basis for disputing the Plaintiffs' claims.

However probative Mr. Mercer's testimony may be, the Court ultimately finds it is outweighed by the substantial risk of unfair prejudice and misleading jury if Mr. Mercer is a sitting judge when his opinion is presented to the jury. For these reasons, Mr. Mercer's testimony must be excluded.

First, there is a substantial risk that Mr. Mercer's testimony would confer the credibility of a judge to that of a biased expert witness thereby undermining the Plaintiffs' ability to cross-examine or rebut his testimony. As noted by the *Georgou* court, "[f]orcing an opposing party to contend with the substance of a witness's testimony as well as the additional measure of credibility that a judge is likely to inspire merely due to his position places a heavy burden on the party opposing the judge's testimony." *Georgou*, 1995 WL 248002, at *4. The Court finds the same burden exists here, especially given the nature of Mr. Mercer's opinions. For example, Mr. Mercer's report includes opinions about the duty of counsel in civil cases, the construction of pleadings in civil cases and "the proof threshold required for a federal judge to issue a search warrant." (Doc. 136-1 at 1). If these opinions are proffered while Mr. Mercer is a judge, it would be practically impossible for the Plaintiffs to challenge the testimony because there is a significant risk that the testimony would be "mistaken for a judicial pronouncement rather than for what it is—the opinion of a single individual." *Georgou* 1995 WL 248002, at *4. It is unlikely that Plaintiffs' counsel would be able to overcome this burden.

18

Second, a jury may mistake Mr. Mercer's deposition as an official judicial endorsement. This concern was raised by the *Joachim* court in the context of excluding judicial testimony under Texas' Judicial Code of Conduct. While the Court is not ruling under the Federal Judicial Code of Conduct, mistaking expert testimony for an official judicial endorsement is similarly a concern in this case, especially in the context of jury decision-making. Certainly, "[e]xpert witnesses, unlike judges, rarely appear impartial; a party does not ordinarily call an expert whose testimony is unfavorable. An expert witness is offered to support a party's position, and if the expert is a judge, the jury may mistake that support for an official endorsement." *Joachim*, 815 S.W.2d at 238. UMIA suggests that voir dire or a limiting instruction would cure this prejudice because Mr. Mercer's deposition will be documented while he is an attorney, not a judge. However, the Court is not convinced that voir dire or a limiting jury instruction would sufficiently cure the concern regarding the jury's ability to distinguish "judge" Mercer from "attorney" Mercer. For this reason, the introduction of Mr. Mercer's deposition runs the risk that the jury would base its decision on something improper, specifically that Mr. Mercer's testimony is an official endorsement, and not simply expert testimony that must be weighed against opposing expert testimony.

Finally, there is a substantial risk that a jury would attach undue weight to Mr. Mercer's testimony. In the context of a county judge testifying as to his mental

processes, the *Georgou* court stated that the judge's testimony was likely to "bear additional weight in the mind of jurors because of his position and authority, . . . and because it automatically bears the imprimatur of character, credibility and reliability emanating from the judge's position rather than the quality or veracity of his testimony." *Georgou*, 1995 WL 248002, at *4 (internal citations omitted). This concept applies similarly to Mr. Mercer's testimony. As noted above, Mr. Mercer's expert report lends valuable support to UMIA's defense. Broadly, it analyzes UMIA's position through a legal lens. While perhaps commonplace for an attorney expert to testify as such, it is quite a different legal perspective coming from a judge. A jury must not only weigh the content of the testimony but also the qualifications of the person delivering it. Even with limited experience on the bench, there is a significant risk the jury could be misled by Mr. Mercer's opinion because not only was he nominated for a judicial seat—he was appointed to one.

Because the probative value of Mr. Mercer's deposition testimony is substantially outweighed by the risk of unfair prejudice and the danger of misleading the jury, the Court finds that his deposition would not be admissible under the Federal Rules of Evidence. Because it is inadmissible under the Rules of Evidence, UMIA cannot satisfy Rule 32's requirements. Accordingly, UMIA may not introduce Mr. Mercer's deposition at trial if he is a sitting judge.

Likewise, for the reasons provided under the Rule 403 analysis, the Court finds that Mr. Mercer's in-person testimony is substantially outweighed by the risk of unfair prejudice and the danger of misleading the jury. Therefore, if he is a sitting judge, his live testimony will similarly be excluded from trial.

### 2. Mr. Mercer as a judicial nominee

If, however, Mr. Mercer remains a judicial nominee by trial, UMIA has advised the Court that he is willing to travel to provide in person testimony. UMIA has not advised the Court as to whether it will seek to introduce his deposition under Rule 32 if Mr. Mercer remains a nominee and is otherwise "unavailable." If that is the case, UMIA will need to notify the Court and demonstrate that it meets Rule 32's requirements. The Court reserves its ruling until UMIA files such a motion.

As to Mr. Mercer's in person testimony, the Plaintiffs arguments remain the same. First, that the Code of Conduct applies to judicial nominees and thus, Mr. Mercer's in person testimony should be precluded. And second, that the probative value of his in-person testimony is substantially outweighed by unfair prejudice.

As to preclusion under the Code, the Court finds that the Code does not bind nominees. Rather, "[t]he Code is designed to provide guidance to judges and nominees for judicial office." *Guide to Judiciary Policy*, Vol. 2A, Ch. 2, Canon 1 (commentary). While a judicial nominee might choose to recuse themselves according to the Code, the Court does not suggest or find that Mr. Mercer's

21

willingness to testify violates the Code. The Court is primarily concerned with how Mr. Mercer's testimony would affect the jury's decision-making and therefore, returns to a Rule 403 analysis.

Unlike the Rule 403 analysis in the previous section, the Court finds that the probative value of Mr. Mercer's expert testimony, even as a judicial nominee, outweighs the risk of unfair prejudice or misleading the jury. A federal judge is fully confirmed by the Senate and commissioned to perform judicial functions; however, a nominee holds no such position or authority. The nominee in this case is simply an attorney hired as an expert, without judicial function or title. Therefore, there is less risk that a jury will improperly confer credibility or give additional weight to his testimony. Any potential prejudice can likely be addressed through voir dire or a limiting instruction. For these reasons, if Mr. Mercer remains a nominee when trial commences, his live testimony should be admitted under this analysis.

## III.    Conclusion

In sum, the Court finds that UMIA may proceed with Mr. Mercer's deposition if it provides the Plaintiffs with reasonable written notice under Federal Rule of Civil Procedure 30. However, if Mr. Mercer is a sitting judge when trial starts, the Court will not permit the use of his deposition testimony pursuant to Rule 32. Alternatively, if Mr. Mercer remains a nominee, the Court will allow him to testify in person so that he may properly be cross-examined by Plaintiffs' counsel.

IT IS SO ORDERED that:

1. The Plaintiffs' Motion to Expedite Ruling on the Protective Order (Doc. 137) is GRANTED;

2. The Plaintiffs' Motion for Protective Order to Terminate the Deposition Testimony of Federal Judicial Nominee William Mercer (Doc. 135) is DENIED;

3. The Plaintiffs' Converted Motion in Limine to Exclude Mr. Mercer's Deposition Testimony (Motion to Bar the Trial Testimony of Federal Judicial Nominee William Mercer (Doc. 135)) is GRANTED IN PART, DENIED IN PART, and RESERVED FOR RULING IN PART.

4. The Clerk of Court shall forthwith notify the parties of the making of this Order.

DATED this _28th_ day of August, 2025.

_Susan P. Watters_

SUSAN P. WATTERS
United States District Judge